STATE EX REL. RANKIN, ATTORNEY GENERAL, RESPONDENT,
*v.* MARTIN, APPELLANT.

(No. 5,283.)

(Submitted September 13, 1923. Decided October 9, 1923.)

[219 Pac. 632.]

*Quo Warranto—Ferries—Forfeiture of Franchise—Complaint— Sufficiency—Nonexperts—Opinion Evidence — Inadmissibility —Action Tried by Court—Incompetent Testimony—Presumption of Nonprejudice—When Rule Inapplicable.*

*Quo Warranto*—Ferries—Forfeiture of Franchise—Complaint—Sufficiency.
1. Complaint in an action of the nature of *quo warranto* brought by the attorney general in behalf of the state to have a ferry franchise declared forfeited for failure of the ferryman to provide a safe and suitable ferry-boat for the accommodation of travelers, examined and *held* sufficient to state a cause of action, under section 9576 *et seq.*, Revised Codes of 1921.

Pleadings—Complaint—When Sufficient.
2. In determining whether the complaint states a cause af action matters of form and irrelevant and redundant allegations must be disregarded, and if from any view plaintiff is entitled to relief, the pleading must be sustained.

*Quo Warranto*—Ferries—Forfeiture of Franchise—Action on Bond not Proper Remedy.
3. The state is not required to bring an action on the bond of a ferryman whom it charges with failing to conduct his ferry as required by law, but may bring an action in the nature of *quo warranto* to have the franchise declared forfeited irrespective of the bond.

Same—Incompetent Testimony.
4. In an action of the nature of the above, testimony that complaints had been lodged with the county commissioners of lack of service at the ferry, that witness had never heard anyone justify the service rendered, and that one of the commissioners had not been in favor of granting the franchise to defendant, was incompetent.

Same—Nonexpert Witness—Opinion Evidence—When Inadmissible.
5. A witness who had not been shown to have any theoretical or practical knowledge of constructing or operating a ferry-boat was not qualified to express an opinion respecting the subject.

Same—Exhibits—Maps—When Inadmissible.
6. In the absence of evidence that the person who had prepared a map of a ferry-boat had any knowledge of the construction or operation of such a boat, admission of the map in evidence for the

---

1. Liability of ferryman for failure to run boat, see note in 68 L. R. A. 155.

purpose of illustrating his testimony while pointing out serious structural weaknesses in the construction of the boat was prejudicial error.

Appeal and Error—Action Tried by Court—Admission of Incompetent Testimony—Presumption of Nonprejudice—When Rule Inapplicable. 7. The rule that on appeal in an action at law tried without a jury (or in an equity case) it will be presumed that the trial court did not consider incompetent testimony in reaching its conclusion, applies only where nothing substantial appears in the record to the contrary, or where the testimony was trifling and of no import, and therefore where palpably incompetent testimony was of import and went to the very matter covered by the court's findings the presumption cannot be indulged and the judgment will be reversed.

Trial to Court—Rules of Evidence to be Respected. 8. The law contemplates that a fair and impartial trial shall be had upon competent evidence, and therefore even in equity cases and actions at law tried without a jury, the rules of evidence should not be regarded lightly and the practice of "throwing down the bars and letting everything in" should be restricted rather than extended.

*Appeal from District Court, Valley County; C. E. Comer, Judge.*

PROCEEDING by the State, on the relation of Wellington D. Rankin, Attorney General, against Frank H. Martin to declare the forfeiture of a ferry franchise. Judgment for plaintiff and defendant appeals. Reversed and remanded.

*Messrs. Dignan & Shea,* for Appellant, submitted a brief; *Mr. James T. Shea* argued the cause orally.

*Mr. C. H. Roberts* and *Mr. Robert S. McKellar,* for Respondent, submitted a brief; *Mr. McKellar* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In a proceeding brought by the attorney general for that purpose, the district court entered a decree declaring forfeited a ferry franchise which the county commissioners of Valley county had some time granted to the defendant. Defendant moved for a new trial, which being denied he appealed to this court.

1. The first, and a difficult, question is whether the complaint states facts sufficient to constitute a cause of action.

Counsel for defendant insist that the action is a proceeding in the nature of *quo warranto* under our statute and therefore is an action at law, while those for plaintiff take the position that the action is in equity, saying the complaint is "a bill in equity in the nature of *quo warranto*," and, further: "The action may be justified upon the theory that the acts of the defendant alleged in the complaint constitute a public nuisance"; and finally they say: "Even considered as a statutory action in *quo warranto*, the facts alleged are sufficient to state a cause of action."

The complaint, after appropriate allegations as to the po-
[1] litical capacities of Valley and Garfield counties and the character of the Missouri River running between these counties, sets forth the fact that the county commissioners of Valley county granted to defendant a franchise for the term of ten years to keep and operate a public ferry across the river; that acting under the franchise and pursuant to the provisions of sections 1457 to 1473, inclusive, of the Revised Codes of 1907 (secs. 1766–1782, Rev. Codes 1921), the defendant placed a ferry-boat upon the river, and "thereafter began the operation of the same by taking and transporting passengers across the said Missouri River for hire, and ever since has continued to operate a ferry-boat intermittently upon said river at and in the vicinity of said Lismas until on or about the sixteenth day of June, 1921, when defendant's ferry-boat was swamped in said river, as hereinafter set forth"; that it was the duty of the defendant to keep, maintain and operate a good and sufficient ferry-boat upon the river and to keep the boat in good and suitable repair for the purpose of transporting and carrying all passengers, teams and vehicles desiring to cross the river at that point; and it was further the duty of the defendant to make trips with the ferry-boat to accommodate all passengers who desired to cross the river there; that the defendant failed and neglected to comply with the conditions and

provisions of the franchise and the laws of this state governing the maintenance and operation of ferry-boats in the following respects: That during all of the times mentioned the defendant failed to erect and maintain a ferry-boat suitable for the purposes set forth above; that the ferry-boat built, constructed and maintained by the defendant was improperly constructed, improperly maintained and unsafe for the purpose for which operated; that the boat was constructed of inferior material, in an inferior manner, was too lightly and weakly constructed to stand the necessary strain to which it must necessarily be subjected in carrying and transporting passengers, commodities, teams and vehicles across the river, and the boat was dangerous, unsafe and a menace to the public; that the defendant has wholly failed, neglected and refused to make trips to accommodate all passengers who desired to cross the river at that point, a number of particular instances in support of the predicate allegation being set forth; and that the defendant "has wholly failed and neglected and refused to make trips with said ferry-boat to accommodate passengers who desire to cross said Missouri River at said point on numerous and various occasions, the details of which are not now within the knowledge of your relator." The plaintiff then sets forth a recitation of different periods of time in which no ferry-boat at all was operated by defendant, following with the allegation that on or about June 16, 1921, the boat sprang a leak, sank in the river, and is still out of repair, and since that date the defendant has wholly failed to render any ferry service. The last allegation is that because of the defective material of which, and the defective manner in which, the boat was constructed, said boat is dangerous and unsafe and a menace to public safety and property, and because of the defects in the material and construction and of the careless and negligent manner in which the boat was operated by the defendant, the same constitutes a public nuisance.

The complaint was filed July 5, 1921. A general demurrer to the complaint was overruled. The defendant's answer con-

sists mainly of general denials with the affirmative allegation that the ferry-boat was at all times operated by defendant "during such seasons of the year as the said river was open for the operation of said boat thereon, except when prevented from so doing by the act of God or unavoidable accident." This affirmative allegation was denied by plaintiff.

The action, if maintainable under the facts alleged in the complaint, is a proceeding in the nature of *quo warranto* under our statute. By the provisions of section 9576, Revised Codes of 1921, a civil action may be brought in the name of the state against a person who usurps, intrudes into or unlawfully holds or exercises a franchise. The attorney general may bring the action. (Secs. 9578, 9579, Rev. Codes 1921.) The pleadings shall be as in other cases. (Sec. 9587, Rev. Codes 1921.) When a defendant is found guilty of usurping or unlawfully exercising a franchise, judgment shall be rendered and he be ousted and altogether excluded therefrom, and, that relator recover his costs. (Sec. 9588, Rev. Codes 1921.)

Sections 9576 to 9601, Revised Codes of 1921, inclusive, came into our laws as a part of the Code of Civil Procedure of 1895. Prior to that provision was made for an "action for usurpation" by sections 242 to 247, inclusive, of the Bannack Laws, pages 93, 94, and these became sections 310 to 316 of the Laws of 1867, pages 197, 198, and continued in force until the 1895 Code was adopted. Section 310 provided: "An action may be brought by the district attorney in the name of the people in this territory upon his own information or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds, or exercises any public office, civil or military, or any franchise within his district, in the territory." In *Territory* v. *Virginia Road Co.,* 2 Mont. 96, the court said: "This statute, to all intents and purposes, is but a re-enactment of the common law upon the same subject." In that case the action was brought by the district attorney on behalf of the people for the purpose of declaring a forfeiture of the defendant corporation's charter. It was alleged that the defendant

had usurped the franchise it claimed, that of maintaining
a wagon road, and it was charged that during the latter months
of 1866 and the earlier months of 1867 the defendant had neg-
ligently failed to improve, complete and maintain the road or
to keep the same in repair, but had negligently permitted the
road to fall into such a state that it was rendered dangerous
and inconvenient to travelers passing over the same. Mr.
Chief Justice Wade said: "The simple question to be tried and
determined is, whether or not the corporation, by their acts
of misuser or nonuser, have forfeited their rights, franchises
and privileges. If they have, their corporate acts are usurpa-
tions upon the people, and this is the matter to be tried."
Further on he said: "Grants confirming franchises, rights and
privileges are contracts between the sovereign power and
private citizens upon certain implied or expressed conditions.
A performance of these conditions by the citizens is the con-
sideration of the contract, and vests the franchise, and a non-
performance of them forfeits it. These franchises, granted
by the Legislature, are an exclusive monopoly, and never should
be made for the private advantage of any person, but solely
for the public good, and when made, the conditions of the
grant, whether implied or expressed, should be complied with
like conditions precedent to any other contract. Precedent
conditions, which must take place before the estate can vest,
must be literally performed. (*Thompson* v. *People*, 23 Wend.
(N. Y.) 537.) The condition precedent to the contract be-
tween this defendant and the people of the territory was, that
the defendant should construct and keep in repair the Virginia
City and Summit City wagon road. This condition should be
substantially complied with, and a failure to comply in a ma-
terial particular would subject the franchise to forfeiture."

Chapter 138 of the Political Code, sections 1766 to 1782, in-
clusive, of the Revised Codes of 1921, have to do with the
establishment and regulation of public ferries. By section
1766 authority to keep a ferry is granted by the county com-
missioners. Section 1770 provides that at the time of granting

authority to keep a public ferry the board of commissioners must fix the amount of the penal bond to be given by the ferryman, fix the amount of license tax to be paid by him, fix the rate of tolls which may be collected for crossing the ferry, and make all necessary orders relative to the construction and business of ferries which they have power to make. Sections 1772 and 1773 read as follows:

1772. "The board of commissioners may make all needful rules and regulations for the government of ferries and ferry-keepers, prescribing:

"(1) How many boats must be kept, their character, and how propelled.

"(2) The number of hands, boatmen, or ferrymen to be employed, and rules for their government.

"(3) When and under what circumstances to make trips in the night-time.

"(4) Who may be ferried free of toll.

"(5) In what cases of danger or peril not to cross.

"(6) Penalties for violation of regulations.

"(7) In case of steamboats, the rate of speed.

"(8) The method of and preference in loading and crossing; and

"(9) How and by whom action must be brought to recover penalties."

1773. "Subject to the foregoing regulations, ferrykeepers must make trips to accommodate all passengers who desire to cross, and any failure so to do subjects the franchise to forfeiture, by a proper proceeding for that purpose."

By 1775 the commissioners are empowered to fix the amount of a bond to be required of the ferry-keeper "conditioned that the ferry will be kept in good repair and condition, and that the keeper will faithfully comply with the laws of the state and all legal orders of the board of commissioners regulating the same," *etc.* It will be noted that the forfeiture provided by section 1773 is to be "by a proper proceeding for that purpose." There is no specific declaration as to what the

proceeding shall be, but in view of the statutes which have been in force since the early days of the territory and the decision of the supreme court of the territory relating thereto, the statutory proceeding in the nature of *quo warranto,* a sufficient remedy, evidently was in contemplation.

But counsel for defendant insist that the complaint does not state facts sufficient to constitute a cause of action because it does not refer to the violation of any specific law of the state. Under the caption, ''What law does plaintiff refer to as being violated?'' they call attention to the fact that it was the duty of the county commissioners at the time of granting the franchise to make rules and regulations governing the maintenance and operation of the ferry; and they say that when these rules and regulations have been fixed, these are the only ''laws of the state of Montana that can be violated by a ferry-keeper; the ferry-keeper cannot violate any statutory provision of law in this state because there is none to violate.'' Their contention is that while the board had the authority to make rules and regulations under the provisions of section 1772, it did not exercise that privilege except as to subdivision 4, which it specified who might be ferried free of toll, and so, they say, the failure of the commissioners to establish the rules and regulations mentioned in sections 1770 and 1772 left the court in a position where there was nothing that it could take as a standard or guide of comparison in determining whether or not the laws of the state had been violated.

Under section 1772 the commissioners are permitted to amplify the duties imposed upon a ferry-keeper beyond the provisions of 1773. In at least two particulars (see subdivisions 3 and 5 of section 1772) they may restrict somewhat the full scope of 1773; but in the absence of any regulatory rules it is clear that a ferry-keeper must comply with all the requirements of that section.

There is no such thing as a ''bill in equity in the nature of *quo warranto,*'' as counsel for plaintiff suggest. This is not an action to abate a nuisance.

Rejecting then, as we must, the theory of plaintiff that the action is in equity, and accepting that of defendant that it is in the nature of *quo warranto* under our statute, we hold that the complaint states a cause of action. Even in the absence of statutory provisions to that end, a ferryman must provide a good and secure boat, suitable and safe in all respects, to accommodate the usual traffic at his place of business, without unreasonable delay. (*Richards* v. *Fuqua's Admr.*, 28 Miss. 792, 64 Am. Dec. 121; *Sanders* v. *Young*, 1 Head (Tenn.), 219, 73 Am. Dec. 175.) "He must use due care in keeping his boats in good repair and running order and in a safe condition, free from anything likely to cause injury to passengers or their property." (25 C. J. 1077.) The allegations of the complaint also bring the case within the provisions of section 1773, *supra*.

It will be remembered that long ago this court laid down the rule that "In determining whether the complaint states [2] a cause of action or entitles plaintiff to any relief, matters of form are to be disregarded, as well as the allegations that are irrelevant and redundant; and if from any view the plaintiff is entitled to relief, the pleading will be sustained. (*Raymond* v. *Blancgrass*, 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 649.)" (*Decker* v. *Decker*, 56 Mont. 338, 185 Pac. 168; *Stiemke* v. *Jankovich*, *ante*, p. 60, 217 Pac. 650.)

2. Defendant also contends that as he gave the bond required [3] by the commissioners under the provisions of sections 1770 and 1775, a proper remedy was provided by suit upon that instrument. This position is not tenable. This is not an action to redress a private wrong, but is one by the attorney general to declare a forfeiture of defendant's franchise under the statute. (See *Territory* v. *Virginia Road Co.*, *supra*.)

3. Trial was to the court, the parties having waived a jury. Numerous assignments of error are based upon rulings of the court in admitting testimony. Some are well taken.

Over defendant's objection, inquiry was permitted as to [4] whether complaints were made to the commissioners be-

cause of lack of service at the ferry. The testimony should not have been permitted. The commissioners were not parties to the action in their official capacities or otherwise. Whether complaints were made to them individually or as a board was not a proper subject of inquiry under the issues which were being tried.

A witness who testified at length concerning poor service, and total lack of service, at the ferry, and who assumed to be conversant with popular sentiment in the matter (popular sentiment respecting the same not being a proper subject of inquiry), was asked this question: "Have you heard any residents south of the river, in talking to you, or in your hearing, justify the ferry service as has been conducted by Frank Martin?" This was objected to upon the ground that it was "based on hearsay evidence, incompetent, irrelevant and immaterial." The court overruled the objection, and the witness answered, "No, sir." Citation of authorities is unnecessary to demonstrate the prejudicial error thus committed by the court.

One of the county commissioners was asked: "Were you in favor or objecting to the granting of this franchise?" Objection was made "on the ground that it is incompetent, irrelevant and immaterial in this case, the franchise has been granted and there is no foundation for it." Further objection was made "for the reason that it is not within the times alleged in the pleadings in this case." The court overruled the objection "for the purpose of showing the opinion of the witness as to the general fitness of Mr. Martin to run and operate a ferry." The witness answered: "To the best of my ability I did not think Mr. Martin was the right person to grant that franchise to." This was followed by the question, "Why?" Over defendant's objection the witness said: "Why, Mr. Martin failed in everything else, everything else he tackled, and I didn't think he was the right person; wanted to get a good live man there to attend to business and serve the public."

As to whether the franchise should have been granted by the commissioners to the defendant was not a proper subject of inquiry at the trial. When the board granted the franchise, it determined, impliedly at least, that the defendant was a fit person to receive that privilege. The personal opinion of the witness was immaterial and his testimony on the subject was incompetent. It will be observed, too, that the answer given by the witness had a strong tendency to put the defendant in anything but a favorable light before the court. The error is manifest.

Over objection of the defendant, a map purporting to de-
[5, 6] lineate the proper construction of a ferry-boat was admitted in evidence "for the purpose of illustrating the testimony of this witness," referring to the witness then on the stand. The map was not made by the witness, nor was it shown to be a correct delineation either of the defendant's boat or of a properly constructed ferry-boat. The person who prepared the map did not testify, nor was it shown that he was possessed of any knowledge either theoretical or practical on the subject under inquiry. The witness on the stand had never worked upon, constructed or operated a ferry-boat, and did not pretend that he was possessed of any expert knowledge on the subject of building or operating ferry-boats. Therefore he was not qualified to express an opinion respecting the same. (Sec. 10531, subd. 9, Rev. Codes 1921; *Cummings* v. *Reins Copper Co.*, 40 Mont. 599, 107 Pac. 904; *Copenhaver* v. *Northern Pac. Ry. Co.*, 42 Mont. 453, 113 Pac. 467; 11 R. C. L. 574.) Yet over objection he was permitted to point out at length what he assumed were serious structural weaknesses in defendant's boat; he was allowed to give opinions which he was not qualified to express and to use the map in illustrating his testimony. The map should not have been admitted. The court's action in admitting it even for illustrative purposes was not justified by anything that is said in *Carman* v. *Montana Cent. Ry. Co.*, 32 Mont. 137, 79 Pac. 690, or *Drew* v. *City of Butte*, 44 Mont. 124, 119 Pac. 279.

Plaintiff attempts to sustain the judgment upon the theory that
[7] ''The admission of incompetent evidence in an equity case
is not reversible error, it being assumed that the court considered
competent evidence, excepting where it clearly appears from the
record that the court considered incompetent evidence, or where
the record—containing all the evidence—does not disclose suffi-
cient competent evidence to support the findings,'' citing *King* v.
*Pony Gold Min. Co.*, 28 Mont. 74, 72 Pac. 309, and other cases.
But this is not an equity case. However, it is undoubtedly the
rule that where a cause at law is tried to the court sitting without
a jury, the mere admission of incompetent evidence will not
bring about a reversal; but to sustain the judgment in such
case on appeal it must be reasonably apparent that the court
was not influenced to the appellant's prejudice by the errone-
ously admitted testimony. We have in mind the provisions of
section 9191, Revised Codes of 1921, that ''the court must, in
every stage of an action disregard any error or defect    *    *    *
which does not affect the substantial rights of the parties, and
no judgment shall be reversed or affected by reason of such
error or defect,'' and of section 9751 that ''no cause shall be
reversed upon appeal by reason of any error committed by the
trial court against the appellant, where the record shows that
the same result would have been attained had such trial court
not committed an error or errors against the respondent.'' But
in the instant case we cannot say from an examination of the
court's findings that it is reasonably apparent that the court was
not influenced by the erroneously admitted testimony to the
defendant's prejudice; and so it would be were the case in
equity. The correct rule on this subject as respects cases in
equity was stated by Mr. Chief Justice Brantly in *Anaconda
Copper Min. Co.* v. *Heinze,* 27 Mont. 161, 69 Pac. 909, where
it is said: ''There is no doubt that this case [*Montana Ore
Pur. Co.* v. *Butte & Boston C. M. Co.*, 25 Mont. 427, 65 Pac.
420] states the general rule observed by this court in equity
cases where it is reasonably apparent that the error committed
in the admission or exclusion of the evidence has wrought no

prejudice in the result. This rule, however, has no application where the error complained of is fundamental, and it is not reasonably apparent that it did not result in prejudice. If the evidence admitted or excluded is trifling, or unimportant, as compared with the competent evidence admitted and considered, and if its exclusion or admission could not have affected the result reached, the judgment or order appealed from will not be reversed on the ground of error in admitting or excluding it. Where, however, the evidence in question is of import, and by the ruling of the court thereon it is made reasonably apparent that it was so regarded by the court, and for that reason probably affected the result reached, the judgment or order based upon it cannot be sustained. The statement made in the case cited is not properly guarded, but it must be interpreted in the light of the conditions there presented. So interpreted, it is apparent that this court did not intend to lay down the broad declaration that a judgment or order made in an equity case will never be reversed upon appeal on the ground that the trial court has erred in admitting and excluding evidence. The intention was to follow, and not overturn, the rule correctly stated in *Merchants' Nat. Bank* v. *Greenhood,* 16 Mont. 395, 41 Pac. 250, 851, which was cited in support of the view entertained of the evidence under consideration. In that case the evidence admitted was of doubtful relevancy and materiality. It was also trifling and unimportant, and could not have affected the result.'' (See *Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805; *Rumping* v. *Rumping,* 41 Mont. 33, 108 Pac. 10.)

In the instant case it cannot be said that the erroneously admitted testimony is trifling or unimportant; on the contrary, it is of import, and we cannot say the court did not so regard it or that it probably did not affect the result reached; a portion of it went to the very matter covered by the court in its findings. The rule that the appellate court will presume that the trial court did not consider incompetent testimony

applies when there is nothing substantial in the record to indicate the contrary.

It has been a matter of common observation by the profession [8] that rules of evidence have been regarded very lightly in the trial of equity cases. A growing tendency has been to "throw down the bars and let everything in." This is a tendency which should be restrained; this practice should be restricted rather than extended. The law contemplates that a fair and impartial trial shall be had upon competent evidence. Further discussion of the subject will not be useful; the error in the present case is palpable and prejudicial.

4. Defendant also complains because testimony offered by him was excluded. We do not find any merit in those assignments.

The judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.