GRIFFITHS, RESPONDENT, *v.* THRASHER, APPELLANT; THOMAS, INTERVENER.

(No. 7,093.)

(Submitted October 5, 1933. Decided October 25, 1933.)

[26 Pac. (2d) 995.]

*Mr. M. J. Doepker,* for Appellant, submitted a brief and argued the cause orally.

214

*Mr. J. A. Poore* and *Mr. W. D. Kyle,* for Respondent, submitted a brief; *Mr. Kyle* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Silver Bow county rendered in favor of plaintiff after her demurrer to defendant's amended answer had been sustained. The action was for the foreclosure of a chattel mortgage covering furniture and furnishings in a hotel in Butte.

On April 19, 1928, plaintiff, respondent here, but hereinafter called plaintiff, sold to defendant, appellant, hereinafter called defendant, the mortgaged personal property for the

sum of $9,000. A payment of $3,000 was made at the time, and fifty-five promissory notes for $100 each were executed for the balance of the purchase price. The notes were payable monthly, commencing June 1, 1928, and ending December 1, 1932. They were secured by a chattel mortgage given by the defendant to plaintiff and covering the property sold. The mortgage was duly filed and possession of the property was taken by defendant. Twenty-five of the notes were paid, being all that matured prior to July 1, 1930. The principal and interest of thirty notes remained unpaid on February 14, 1931, when this action was instituted. The complaint alleged the nonpayment of the sum of $3,000 and interest, and demanded the foreclosure of the chattel mortgage by reason of the failure of the defendant to pay.

The defendant filed answer, admitting the execution of the notes and mortgage, the payment of the twenty-five notes, and the failure to pay the balance. It contained formal denials, three affirmative defenses to the complaint, each separately stated, and two cross-complaints.

The first affirmative defense set forth that John H. Curtis & Co., a copartnership consisting of John H. Curtis, Jr., and George D. Curtis, was joint owner with plaintiff in the notes and mortgages, and was the duly authorized agent of the plaintiff, with full power and written authority to represent plaintiff and handle the notes and mortgage on her behalf; that on or about June 30, 1930, in consideration of the sum of $1,000, paid by defendant to John H. Curtis & Co., the plaintiff, through her agent and co-owners, did promise and agree that the then unpaid notes, thirty in number, would all be extended from the respective due dates until July 1, 1932; that the above sum was paid to and received by John H. Curtis & Co., and that the same was with the knowledge of plaintiff as co-owner, and that she fully ratified the agreement and received her full share of the amount; that, although the extension agreement was fully executed as to the payment and performance on the part of the defendant, plaintiff did on February 13, 1931, in violation of the agree-

ment, institute this action for the collection of the notes and the foreclosure of the mortgage.

The second affirmative defense reiterated the facts of the first defense, with the added allegation that plaintiff should be estopped from alleging the facts set forth in her complaint as a cause of action. In effect, the second separate defense is a plea of estoppel.

The third affirmative defense repeats the facts of the first separate defense, with an additional paragraph alleging that, by reason of those facts, plaintiff had expressly waived the provisions of the notes so far as time of payment was concerned.

The first cross-complaint contained in defendant's answer alleges the facts of the sale, the execution of the notes and mortgage, and the payment of the first twenty-five notes, together with the nonpayment of the balance, and repeats the allegation that the Curtis Company and plaintiff were the owners of the notes and mortgage, and that the Curtis Company had full power to represent plaintiff with relation to the notes and mortgage. This cross-complaint contains a separate paragraph repeating the allegations as to the extension agreement, alleging that, in violation of that agreement, plaintiff instituted this action and took the property covered by the mortgage from the possession of the defendant and converted the same to her own use, and still has the property under her control; that by reason of the suit and threats of suit made by plaintiff to various and divers persons, and communicated to the tenants of defendant, the tenants were caused to remove from the Park Hotel, in which the furniture and furnishings were being used, and defendant was thereby deprived of her business and damaged in the sum of $10,000.

The second cross-complaint alleges the fact of the sale of the property, the execution and delivery of the notes and mortgage, the payment of the twenty-five notes, the nonpayment of the thirty notes, and, in addition thereto, alleges that, as an inducement offered by the plaintiff to the defendant for the purchase of the property, plaintiff represented to defendant and warranted to her that each and every room then rented

in the building was permanently rented to desirable tenants who paid their rent promptly; that such tenants were paying rentals in certain specified amounts, and were of good character and desirable tenants, so as to make the business of the hotel worth the reasonable sum of $2,500 at the time of the sale, over and above the reasonable value of the property; that the representations and warranties made by plaintiff to defendant were false, and were known to be false by plaintiff, and were made for the purpose of inducing defendant to pay the sum of $2,500 for the business over and above the reasonable value of the property; that defendant had a right to rely upon the acquaintanceship of the plaintiff with her tenants, her knowledge of the manner in which they paid their rent and the amount of rent which they, by contract with plaintiff, had agreed to pay and had been paying, but notwithstanding, for the purpose of verifying the statements of plaintiff, the defendant made inquiries of several of the tenants to whom she was referred by the plaintiff for the purpose of verifying the representations made, and that in each case the tenants, who were by the defendant alleged to be confederates and conspirators with plaintiff in a scheme to defraud prospective purchasers of the Park Hotel, did verify such representations.

It is further alleged that defendant had no opportunity prior to taking possession of the hotel to determine for herself the facts as to the character, desirability and good pay of the tenants, and therefore relied upon the representations and warranties of the plaintiff; that, after taking possession of the property, defendant discovered that many of the tenants were persons of bad character who had been solicited to room in the premises the few months immediately preceding the sale of the property, and during the time plaintiff had the property listed for sale, for the purpose of cheating and defrauding any prospective· purchaser whom she might ensnare by her false representations, in order to obtain a fraudulent advantage of such purchaser; that plaintiff did thus ensnare and cheat defendant, and that, as a result, the purchase price paid by defendant failed in the sum of $2,500, and plaintiff

was cheated and defrauded by such act in that amount; that, upon taking possession of the premises, defendant first learned that, not only were many tenants of the character above described, but that the rooms were not being rented for the prices claimed; that many of the tenants did not pay any rent whatsoever; that such representations were made for the purpose of defrauding defendant; and that defendant was cheated and defrauded thereby.

It is then alleged that, by reason of the acts of plaintiff, defendant was induced to take a three-year lease upon the hotel property from the owner thereof at a rate higher than she would otherwise have paid, had it not been for the false and fraudulent representations and warranties made by plaintiff, and that defendant did further agree in the lease to pay encroachment taxes and other expenses in connection with the property which she would not have otherwise incurred but for such false representations and warranties made by plaintiff, and that defendant thereby suffered damage in the sum of $5,680; that, immediately after the sale, plaintiff departed from the state of Montana and remained away until July 1, 1930; that defendant was informed immediately after the sale, and believed, that the notes and mortgage had been assigned by plaintiff to third persons who were not acquainted with the details of the transaction relating to the sale of the property.

The prayer of the answer is to the effect that plaintiff take nothing, that the action be abated in favor of the defendant and against the plaintiff, and that defendant have judgment for $15,680 and interest.

The plaintiff filed a demurrer to the amended answer, stating specifically and separately the grounds of demurrer urged against each separate defense and cross-complaint. The grounds stated with relation to the separate defense were general, except that it was alleged that the defenses were not of the character specified in section 9138 of the Revised Codes of 1921. The grounds upon which the demurrer was asserted against the cross-complaints were substantially the

same as those lodged against the separate defenses. The court sustained the demurrer *in toto*. Defendant refused to plead further, and judgment was entered against her.

A complaint in intervention was filed by Pearl Thomas. After trial of the cause, separate appeals were taken by the defendant and intervener. The rights of the intervener are the subject of a separate opinion.

While but one demurrer was filed, and it was lodged against all of the affirmative defenses and cross-complaints, and was sustained as to all, nevertheless it is necessary to consider the effect of the demurrer upon each defense and each cross-complaint.

As we have indicated, the three separate defenses are almost identical. In each instance the facts of the alleged extension are set forth, together with the fact of the payment of the consideration therefor, and the receipt by the plaintiff of her share thereof. In the first affirmative defense the allegations cease at that point. Apparently the facts were there pleaded as a general defense.

The second affirmative defense contains an additional paragraph, alleging the full execution of the new oral agreement by defendant and the partial execution by the plaintiff, the allegation being that the contract was fully performed by the defendant, and that the extension agreed upon, to be in effect to and including July 31, 1932, was only made operative by the plaintiff until February 13, 1931, the beginning of this action. This paragraph sought to define the remedy of the defendant as estoppel.

The third defense contains an additional paragraph of allegations seeking to define the alleged contract of extension as a waiver by plaintiff. Apparently the pleader, in an excess of caution, sought to plead every theory under which the alleged facts might prove beneficial.

In the first defense defendant merely contented herself with a recitation of facts without definition of the type of relief sought. In the second defense she sought to construe the same facts into a plea of estoppel. This plea doubtless an-

ticipated the reliance of plaintiff on the statute of frauds, and was intended to bring plaintiff within the rule that a person is estopped to assert the statute of frauds where such assertion would amount to practicing a fraud. (*Seymour* v. *Oelrichs,* 156 Cal. 782, 106 Pac. 88, 134 Am. St. Rep. 154, and cases cited.)

The additional allegations found. in the third defense seek to take advantage of the facts of the alleged extension as a waiver. This paragraph was designed on the theory that an oral agreement altering the terms of a written contract within the statute of frauds might be admissible to establish a waiver. (*Kingly* v. *Kressly,* 60 Or. 167, 111 Pac. 385, Ann. Cas. 1913E, 746, and notes; 12 Cal. Jur., p. 926, sec. 96.) The pleader evidently had in mind that sometimes the disability resulting in such cases has been characterized as an estoppel and sometimes as a waiver. (*Gallagher* v. *Nichols,* 60 N. Y. 438; *General Electric Co.* v. *Nat. Contracting Co.,* 178 N. Y. 369, 70 N. E. 928; *Thomson* v. *Poor,* 147 N. Y. 402, 42 N. E. 13.)

In our opinion, the legal designation of the remedy or the relief sought is not particularly important. Therefore we will discuss all the affirmative defenses and the demurrer thereto together.

It must be remembered that the issue comes here on demurrer, so that the answer must be taken as true by the court; that it must be considered liberally; that whatever is necessarily implied or can be reasonably inferred therefrom is to be treated as averred directly, and, if from any view defendant is entitled to relief, the pleading must be sustained. (*Ray* v. *Divers,* 72 Mont. 513, 234 Pac. 246; *Grover* v. *Hines,* 66 Mont. 230, 213 Pac. 250; *State ex rel. Rankin* v. *Martin,* 68 Mont. 392, 219 Pac. 632; *Stiemke* v. *Jankovich,* 68 Mont. 60, 217 Pac. 650; *Grant* v. *Nihill,* 64 Mont. 420, 210 Pac. 914.)

The allegations of the answer being admitted by the demurrer, we come to the main point in the case, which may be stated thus: Defendant paid to plaintiff, in the manner, at the time and under the circumstances alleged, the sum of

$1,000 for an extension or postponement of the due dates of certain notes. The chief question for us to decide with relation to the separate defenses is: Was the agreement of June 30, 1930, executed? Plaintiff says "No," and asserts as her reasons the following: "(1) The contracts which it purports to modify being in writing, can only be altered by a contract in writing, or by an executed oral agreement; (2) it is executory but not executed in character; (3) it is not to be performed within a year from the making thereof, and is required therefore to be in writing; (4) it does not purport to be made directly with the plaintiff but through an agent representing plaintiff; and it being required by law to be in writing, the authority of the agent must also be in writing."

Principal reliance is placed upon section 7569, Revised Codes of 1921, which provides that a contract in writing may be altered by a contract in writing or an executed oral agreement, and not otherwise; and upon section 7552, which provides that an executed contract is one the object of which is fully performed.

The briefs of both parties are largely devoted to arguments somewhat beyond the blunt question of whether or not the oral contract was entirely executed. Defendant urges the adoption of the rule that an oral agreement which has been executed and fully performed by one party, and which modified a previous written contract, is enforceable. Many authorities are cited in support of that contention. It is not necessary, however, for us to consider all of the elements involved in that theory to define the rights of the parties here concerned. Plaintiff cites many cases, but an examination of these authorities discloses that in every instance there was something left undone at the time of the agreement—something remaining for future performance.

It is true that, if the oral contract or agreement was not fully executed, it would of necessity come under the ban of the statute and violate the rule approved by this court. Plaintiff seeks to stand upon a pronouncement made in the recent

case of *Continental Oil Co.* v. *Bell,* 94 Mont. 123, 21 Pac. (2d) 65, 67, wherein this court said: "An oral agreement altering a written agreement is not executed unless its terms have been fully performed." That language was used in a case wherein it was sought to collect certain refunds on gasoline sales. Clearly, the contract there under consideration had not been executed, because the court further said: "The defendants by their counterclaims were seeking to secure the further performance of these oral contracts for the year 1929."

Here the contract was executed, and everything to be done by the parties was done. Defendant was to pay $1,000 for an extension of time on the notes. She paid the money. The extension was granted then and there. Nothing was left for future performance. The dates of payment of the notes were either all extended or none were effected. We hold that the extensions were made for the considerations paid. The agreement was executed. That being the fact, the agreement did not transgress the statute or the rule laid down by this court.

The object sought by the parties was not to provide for some future act, but to effect the instant extension. That object was accomplished. The fact that plaintiff later sought to repudiate the agreement does not change the legal effect of the contract. Plaintiff was not required to do anything further. In fact, she is not attempting in this action to do anything further in the matter other than to effect a complete repudiation of the contract or agreement executed for a cash consideration. Any other view of the case does violence to the facts as alleged. It does not require any forced construction to understand that the payment of the $1,000 was made to obtain an instant extension of time for the payment of the notes. The agreement came within the rule that "the date when an oral agreement takes effect as altering a written contract is the date when it is executed." (6 Cal. Jur., p. 377.) Under the circumstances, therefore, we must hold that the agreement of extension was executed. In this holding we are sustained by ample authority. Ruling Case Law states the matter in the following language: "Another distinction between an executory

and an executed contract is that the former requires affirmative action for its establishment, but the latter remains in force until disaffirmed." (6 R. C. L., p. 591, sec. 9.)

An early California case 'is typical of the cases generally cited to support the rule for which plaintiff contends. There the court apparently laid down the rule that the time of payment of a promissory note could not be extended by an oral agreement. An examination of the facts, however, makes manifest the difference between the situation involved in that case and those under consideration here. There the court pointed out the reasons for the holding, and said: "Section 1698 of the Civil Code provides: 'A contract in writing may be altered by a contract in writing, or by an executed oral agreement, but not otherwise.' The promissory note set forth in the complaint is a contract in writing. It is claimed that it was altered. It is not claimed that it was altered by any contract in writing, but by an oral agreement. The oral agreement has not been executed. The rate of interest agreed upon was the same as the promissory note provided for. It would have drawn that rate until paid if the agreement had not been made. The interest was not paid in advance, and no interest has been paid which was not due at the time it was paid according to the written terms of the promissory note. The contract extending the time one year was not executed at the time the action was brought, and in the nature of things could not have been." (*Henehan* v. *Hart*, 127 Cal. 656, 60 Pac. 426, 427.) The additional factor present here, and we think the controlling factor, was the allegation of the payment of $1,000, which was not to apply upon either principal or interest, but was an independent consideration for the extension and for no other purpose.

In the notes appended to the case of *La Fayette County M. Corp.* v. *Magoon*, 3 L. R. A. 761, it is said: "An executed contract remains in force until disaffirmed. An executory contract requires affirmatory action for its establishment."

The California court upheld a like oral agreement in an action to foreclose a chattel mortgage. There it was alleged

that the sum of $13,500 was due for rents. The trial court found that the terms of the original lease as to the amount of rentals had been modified by an executed oral agreement, and a decree was entered accordingly. The appellate court said: ''The findings of the trial court * * * indicate that there was an executed oral modification of the written agreement of lease, and, so far as this contention is concerned, it only remains to determine whether or not the evidence supports the findings. * * * When therefore the trial court, on sufficient evidence, found the existence of an executed oral contract modifying the terms of the original lease as to the rent, and further found that it had been fully performed, it finally settled the issues of this case.'' (*Anderson* v. *Adler*, 42 Cal. App. 776, 184 Pac. 42, 43.)

The contention that Curtis & Co., agent, was required to ▇ have written authority becomes untenable in the light of our holding that the contract was an executed one. If the contract by reason of having been executed was not required to be in writing, then it follows that the authority of the agent was likewise not required to be in writing. (27 C. J., sec. 408, p. 323; *Hammel* v. *Feigh*, 143 Minn. 115, 173 N. W. 570; *Colon* v. *Tosetti*, 14 Cal. App. 693, 113 Pac. 365, 366.)

Further, it must be observed that defendant in each of her separate defenses alleges that plaintiff was not the sole owner and holder of the notes, but that they were owned jointly by the plaintiff and Curtis & Co. So the allegation then stands that Curtis & Co., joint owner of the notes with plaintiff and acting for itself and for her, consummated a contract of extension. Ownership of the notes was a material matter in the suit for their collection. (*First National Bank of Miles City* v. *Barrett*, 52 Mont. 359, 157 Pac. 951.)

The numerous cases cited by both parties cover a wide field. It may fairly be said that, while they were decided upon a slightly different theory from that here declared, nevertheless the principles recognized and declared in the cases do no violence to our conclusion in this case.

The demurrer to the three separate affirmative defenses should have been overruled.

The first cross-complaint is predicated upon damages in the ▮ sum of $10,000, alleged to have been suffered by defendant by reason of the commencement of the instant action by taking over the property in the course of the suit and by reason of threats of suit, and the resulting damages. This counterclaim is largely based upon causes growing out of the institution of the action. The basis of the counterclaim did not exist at the time of the commencement of the suit, unless the threats to sue were made prior to suit and this fact does not appear in the allegations. In any event, the demurrer to the first counterclaim was properly sustained. (See *Dreidlein* v. *Manger*, 69 Mont. 155, 220 Pac. 1107; *Dick* v. *King*, 73 Mont. 456, 236 Pac. 1093.)

Under specification of error No. 5, defendant urges that the court erred in sustaining the demurrer to the second cross-complaint. By this cross-complaint damages in the sum of $5,680 are sought to be recovered by defendant. The claim is based upon the alleged fraud and misrepresentations of plaintiff, respecting the character of the tenants, the rentals paid by them, etc.

In stating the elements of actionable fraud predicated upon ▮ false representations, this court has announced the rule that the pleading must disclose with reasonable certainty the following facts: (a) That certain representations were made by the seller; (b) which the purchaser had a right to rely upon; (c) that the representations were false; (d) that the purchaser believed them to be true; (e) that he relied upon them; (f) was induced by them to make the purchase; and (g) in consequence thereof was injured. (*Connelly Co.* v. *Schlueter Bros.*, 69 Mont. 65, 220 Pac. 103; *Butte Hardware Co.* v. *Knox*, 28 Mont. 111, 72 Pac. 301.)

Plaintiff contends that one of the above elements (viz., ▮ defendant's reliance upon the representations made by plaintiff) is lacking in the cross-complaint under consideration. True, it appears from the cross-complaint that the defendant

did interview several of the tenants of the hotel, and that all of those so interviewed verified the assertions of the plaintiff as to rentals paid, etc. Because of this investigation by the defendant, it is urged that the law gave her no further right to rely upon such representations. In support of this contention plaintiff cites the case of *Helena Adjustment Co.* v. *Claflin,* 75 Mont. 317, 243 Pac. 1063, 1065, and that of *Carbon County* v. *Draper,* 84 Mont. 413, 276 Pac. 667. The first of these cases lays down the general doctrine that, "when it appears that a party, who claims to have been deceived to his prejudice, has investigated for himself, or that the means were at hand to ascertain the truth * * * of any representations made to him, his reliance upon such representations, however false they may have been, affords no ground of complaint." In the *Draper Case,* supra, the same general principle was announced. However, a careful perusal of these two cases will disclose that the facts involved were entirely different from those alleged in the cross-complaint under consideration here. While defendant in her answer did disclose that she had made some investigation as to the truth of such representations, she also alleged that plaintiff had filled the hotel with people who were confederates and co-conspirators with the plaintiff in a scheme to defraud prospective purchasers. Hence it becomes quite apparent that the facts thus alleged go far beyond the general rule laid down in the cases cited. In short, the defendant charges that the purported tenants were mere agents and accomplices of plaintiff in a general scheme to defraud prospective purchasers of the hotel. In view of such allegations, it cannot be said either that defendant really made an independent investigation for herself (though she may have thought at the time that she was so doing), or that the means were at hand to ascertain the truth. Indeed, under the circumstances as charged, it would have been very difficult, almost impossible, for her to ascertain the truth of the assertions and representations so made.

Plaintiff has failed to cite, and we are unable to find, any authority that would place so rigid a requirement upon one

in a situation such as that of the defendant in this case. In a case very similar to this, the California supreme court has held that the fact that defendant made some investigation would not be sufficient to bar her from alleging and proving a reliance upon the representations made by the plaintiff. In that case the court said: "It is true that the evidence shows that the plaintiffs did make some independent investigation and were informed by the tenant that he could pay his rent; but it further shows that they relied upon the statements of defendants concerning the same, and that they would not have gone through with the transaction had they known the true facts. The mere circumstance that one makes an independent investigation or consults with others does not necessarily show that he relied on his own judgment rather than upon the representations of the other party, nor does it give rise to a presumption of law to that effect. Here plaintiffs were deceived by the tenant, who subsequent to the completion of the transaction informed them he had paid no rent. Under these circumstances, plaintiffs were misled through no fault of theirs, and as they also relied upon the representations of the defendants they are entitled to relief from the fraud practiced upon them." (*Sullivan* v. *Helbing,* 66 Cal. App. 478, 226 Pac. 803, 805. See, also, *Champneys* v. *Irwin,* 106 Wash. 438, 180 Pac. 405.) This same view is stated with approval and numerous authorities upholding it are cited in 26 C. J., page 1149, section 68.

In view of these authorities, we cannot say that defendant failed adequately to state all the elements necessary to constitute actionable fraud.

There is no merit in plaintiff's contention that the allegation of fraud in defendant's cross-complaint was barred by the statute of limitations. This plea was not available to plaintiff on demurrer. (Sec. 9065, Rev. Codes 1921; *Reed* v. *Richardson,* 94 Mont. 34, 20 Pac. (2d) 1054, and cases there cited.)

Plaintiff contends that defendant will be held to have waived any objection to the contract in question by reason of

the fact that it appears that she had learned of the alleged fraud approximately three years prior to the filing of her answer. Defendant alleged facts that would tend to negative any such waiver; i. e., that immediately after execution of the mortgage plaintiff had left the state and did not return until on or about July 1, 1930. In support of their contention of a waiver by defendant, counsel for plaintiff cite the case of *McConnell* v. *Blackley,* 66 Mont. 510, 214 Pac. 64, 66. But that case merely lays down the rule that "a contract must be promptly rescinded upon discovery of fraud or it will be regarded as having been ratified." However, it does not appear from the pleadings that defendant is seeking a rescission of the contract; in fact, it affirmatively appears that she elected to affirm the contract and sue for damages resulting from the alleged fraud. Her right to follow this procedure is fully recognized in the case of *Koch* v. *Rhodes,* 57 Mont. 447, 188 Pac. 933. (See, also, *Del Vecchio* v. *Savelli,* 10 Cal. App. 79, 101 Pac. 32, and *Van Vleit Fletcher Auto. Co.* v. *Crowell,* 171 Iowa, 64, 149 N. W. 861.) In a case involving quite similar circumstances, the court said: "The purchaser of property who has been induced to make the purchase by fraud has an election of remedies. He may retain the property, and, when sued for the purchase money, may set up the fraud as a defense. If the injury sustained by the purchaser be equal to or greater than the purchase money, he may defeat the action entirely." (*Wulschner-Stewart Music Co.* v. *Hubbard,* 44 Ind. App. 526, 89 N. E. 794.)

Plaintiff says that the claim sought to be established in ▮▮ ▮▮ this cross-complaint does not come within the contract or transaction set forth in plaintiff's complaint, and therefore, under section 9138, Revised Codes of 1921, is not allowable. True, part of the damages sought in the cross-complaint arise out of the fact of plaintiff having entered into a three-year lease with the owner of the block wherein the business in question was conducted; but we fail to see that this would place the cross-complaint outside the meaning of the Code section cited above. "In determining whether a counter-

claim arises out of the transaction set forth in the complaint as the foundation of plaintiff's claim (Rev. Codes 1921, sec. 9138), the court is not limited to the facts alleged in the complaint but may look to all the facts and circumstances out of which the injury complained of by plaintiff arose. The 'transaction' set forth in the complaint out of which a cause of action must arise to be pleadable as a counterclaim, is that combination of acts and events, circumstances and defaults, which, viewed in one aspect, results in the plaintiff's right of action, and, when viewed in another aspect, results in defendant's right of action, the rule being the same whether the action be *ex contractu* or *ex delicto.*" (*Mulcahy* v. *Duggan,* 67 Mont. 9, 214 Pac. 1106.) Certainly it cannot be said here that the acts set forth in the cross-complaint did not arise out of the transaction which is the subject of plaintiff's complaint.

As a final argument, plaintiff asserts that the cross-complaint under discussion, when considered with the other one and the three affirmative defenses, discloses such inconsistent and contradictory theories as to make the former incompatible with the latter, and therefore not allowable, citing *Advance-Rumely Co.* v. *Terpening,* 58 Mont. 507, 193 Pac. 752. That case laid down the rule that, "although it is permissible, under our procedure, to set forth inconsistent defenses, they must not be so inconsistent as to be incompatible." But, as we have already said (in dealing with the question of defendant's right to affirm the contract and sue for damages sustained from the alleged fraud), we do not find any such incompatibility as is asserted by the plaintiff; indeed, it would be going rather too far to hold that there was even any inconsistency between this cross-complaint and the other defenses and cross-complaint contained in defendant's answer.

After a careful consideration of every argument raised by plaintiff in regard to the second cross-complaint, we find that the same are not borne out. The second cross-complaint was not vulnerable to the demurrer.

The judgment is reversed and the cause remanded, with directions to overrule the demurrer to the three separate affirmative defenses, sustain it as to the first cross-complaint and overrule it as to the second cross-complaint.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.