[Civ. No. 2961.   Fourth Dist.   Feb. 15, 1943.]

ALBERT E. KALKRUTH et al., Respondents, v. RESORT PROPERTIES, LTD. (a Corporation), Appellant.

Grant Holcomb and George C. Lyon for Appellant.

Guthrie & Curtis for Respondents.

MARKS, J.—This is an appeal from a judgment quieting plaintiffs' title to real estate and awarding them damages in the sum of $790.50 because they were sold one certain lot after they had been shown, and when they believed they were buying another. We will refer to Resort Properties, Limited, as the defendant.

Defendant presents four grounds for reversal of the judgment: (1) That the findings of fraud are not supported by the evidence; (2) that the action is barred by the statute of limitations; (3) that plaintiffs discovered the falseness of the representations in 1935 and had no right to thereafter rely upon them or any other representations of defendant; (4) that under the contract, if fraud be assumed, plaintiffs had a cause of action for rescission and return of the purchase price paid but could recover no damages.

Defendant was the owner of Lakebrook Park, near Lake Arrowhead in San Bernardino County. In 1928, Lot 1 in Block 9, had been sold to Terry V. Davenport.

On September 20, 1930, H. B. Washburn, who was then tract manager and agent for defendant, showed plaintiffs several lots in Lakebrook Park. On that day a written conditional sales contract for the sale of Lot 2 in Block 9 was

executed, with Albert E. Kalkruth named as purchaser and defendant as seller. The purchase price was $240, to be paid in instalments. The purchase price was paid and Loretta S. Kalkruth became the record owner of the property. Lot 2 in Block 9 adjoins Lot 1 in Block 9 on the west.

Plaintiffs began the erection of a cabin in 1931. Various improvements and additions were made. The final improvement was the completion of a kitchen in 1936. Plaintiffs spent $934 in the erection of their cabin. It was built on Lot 1 in Block 9 instead of Lot 2, which, according to their contract they had purchased. In 1938, Mr. and Mrs. Davenport notified plaintiffs that they were the owners of Lot 1 in Block 9 and took possession of it together with the cabin which plaintiffs had built. This action was filed on September 13, 1940.

The foregoing facts are not in serious dispute.

Plaintiffs testified that Washburn showed them Lot 1 in Block 9 and represented to them that it was Lot 2 in Block 9; that they were ignorant of the legal descriptions of the lots, believed this representation was true and relied upon it; that they did not learn of its falsity until 1938. The trial court found on proper supporting evidence that fraud had been committed; that the reasonable market value of Lot 2 was $150, or $90 less than the value of Lot 1 which plaintiffs believed they were purchasing; that the reasonable market value of the cabin erected by plaintiffs was $934, less $233.50 depreciation; that plaintiffs had been damaged by the fraud in the sum of $790.50 for which amount judgment was given.

▇ The attack on the sufficiency of the evidence is directed principally at the evidence of the plaintiffs and their conduct. It goes to their credibility and the weight to be given their testimony. Such questions are addressed to and settled by the trier of fact. They testified they were shown Lot 1 by the agent and were told by him it was the lot they were purchasing while as a matter of fact they were sold Lot 2 which they did not want. The trial judge accepted this evidence as true and it is legally sufficient to support the finding of fraud. (*Sherratt* v. *Hellman Commercial Trust & Savings Bank,* 112 Cal.App. 542 [297 P. 582].)

▇ The trial court found on supporting evidence that plaintiffs were in possession of Lot 1 without knowing its correct legal description and had no notice or knowledge that it was not the lot they had purchased until July, 1938. As

the complaint was filed on September 13, 1940, clearly the cause of action was not barred by the provisions of subdivision 4 of section 338 of the Code of Civil Procedure, as the complaint was filed well within three years after the discovery of the fraud, unless there be merit in the contention next considered.

Defendant urges that the statute of limitations had run and that plaintiffs could not rely on any further representation made by defendant through its officers or agents because Albert E. Kalkruth learned of the fraud and misrepresentations in 1935 from Charles M. Wells. Kalkruth described this occurrence as follows:

"Q. Describe what occurred? A. Well I was working in the rear bedroom nailing on lath and finishing, and Mr. Wells walked in, and I didn't know him, and I was dumbfounded when he unfolded a map along side of me and said 'Kalkruth, you have built on the wrong lot.' In fact the hammer fell out of my hand. I didn't know what to say. I said 'I have built on the right lot,' and I said I was going after Mr. Lyon, Which I did. Q. What did you do? A. I went down the road, down that hill, and some way I located Mr. Lyon. Q. How long a period did it take you to locate him? A. I think it was about three hours difference from the time Mr. Wells spoke to me and the time Mr. Lyon got in touch with me. Q. Did you have a conversation with Mr. Lyon at that time? A. I did. Q. What was the substance of that conversation? A. I explained to him what Mr. Wells had told me, and I had a metallic tape and Mr. Lyon and I started six or seven lots down Hemlock Drive and measured up to this lot that was shown to me and sold to me, and he said I was safe, that everything was O. K. so I went ahead later on and finished the bedroom and even added the kitchen, and there was nothing more said about it until 1938. Q. You say this conversation and measurement of the lot took place in July of 1935? A. That is right. Q. Had you been told by any person, any person whomsoever, prior to that date that your cabin was built on the wrong lot? A. No sir. Q. After July of 1935 when was the next time any person told you you were built on the wrong lot? A. It was either the month of July or August. I think if I am correct the latter part of July, 1938."

Defendant argues that this evidence establishes knowledge

of the fraud by plaintiffs more than five years before the action was filed and that they thereafter could not rely upon any representation made by defendant's officers by whom they had been defrauded, citing *Lady Washington C. Co.* v. *Wood*, 113 Cal. 482 [45 P. 809]; *Consolidated Reservoir & Power Co.* v. *Scarborough*, 216 Cal. 698 [16 P.2d 268]; *Smith* v. *Martin*, 135 Cal. 247 [67 P. 779]; *Feak* v. *Marion Steam Shovel Co.*, 84 F.2d 670; *Phillips* v. *Baker*, (Tex.Civ. App.) 114 S.W.2d 421; *Turman* v. *Holmes*, 29 Cal.App.2d 198 [84 P.2d 225].

We do not believe the rules announced in those cases should be strictly applied to the facts of this case. John Lyon was the president, general manager and principal stockholder of defendant. When Wells, a stranger to Kalkruth, said the cabin had been built on the wrong lot, Kalkruth immediately and naturally consulted a man who should have knowledge of the facts, namely, the president of the vendor corporation who was active in the management of its affairs. Lyon and Kalkruth returned to the cabin and made measurements. Lyon, who should have known the true facts, assured Kalkruth that everything was all right. We see nothing unusual in Kalkruth accepting this assurance as true as against a statement of a stranger to the contrary. We believe that when, as here, the buyer has only a suspicion of the fraud, and the seller who has defrauded the buyer, lulls the buyer into a sense of security by both words and conduct, the seller should not be permitted to assert that the buyer had lost his rights by waiving the suspicion and accepting the reassurance of the seller that no fraud had been perpetrated. This rule was applied in *Curtis* v. *Title Guarantee etc. Co.*, 3 Cal.App.2d 612 [40 P.2d 562, 42 P.2d 323], where it was said:

"Respondent testified that when she saw the university buildings were not being constructed she talked to an agent of respondent, [appellant] who explained the delay by informing her that representatives of the university were in the east raising money. This apparently quieted her fears and she made her payments. Where the vendor by promises or representations to the vendee causes the vendee to postpone efforts to rescind the contract the vendor cannot urge the failure of the vendee to rescind within the time during which the vendee's fears of fraud have been lulled by such representations. (*Cooper* v. *Huntington, supra,* [178 Cal. 160 (172

P. 591)].)'' (See, also, *Lozier* v. *Janss Investment Co.,* 1 Cal.2d 666 [36 P.2d 620].)

█ The contract of sale contained the following provision: "It is agreed that the Seller is not responsible or liable for any inducement, promise, representation, agreement, condition or stipulation not set forth herein. . . . ''

Defendant urges that under the law now prevailing in this state, and first announced in *Speck* v. *Wylie,* 1 Cal.2d 625 [36 P.2d 618], the quoted clause of the contract left plaintiffs with only an action for rescission of the contract and return of the purchase price and denied them an action for damages resulting from the fraud of the agent. (See, also, *Lozier* v. *Janss Investment Co., supra, Greenberg* v. *Du Bain Realty Corp.,* 2 Cal.2d 628 [35 P.2d 579, 42 P.2d 628]; *Graham* v. *Los Angeles etc. Bank,* 3 Cal.2d 37 [43 P.2d 543]; *Harnischfeger Sales Corp.* v. *Coats,* 4 Cal.2d 319 [48 P.2d 662]; *Weiner* v. *Roof,* 10 Cal.2d 450 [74 P.2d 736]; *Weiner* v. *Roof,* 19 Cal.2d 748 [122 P.2d 896]; *Curtis* v. *Title G. & T. Co., supra; Wagaman* v. *Clifford F. Reid, Inc.,* 5 Cal. App.2d 168 [42 P.2d 678]; *Schroeder* v. *Dickinson & Gillespie Corp.,* 6 Cal.App.2d 175 [44 P.2d 425].)

The reason for the application of the rule in cases where the principal has limited the authority of the agent in the contract of purchase is thus set forth in *Greenberg* v. *Du Bain Realty Corp., supra*:

"In these later cases the rule is now firmly established that a rescission of contract may be had against even an innocent principal because of unauthorized misrepresentations by his agent, even though the rescinding party had notice of the agent's lack of authority. In those decisions, we endeavored to, and believe we did, make it clear that the basis for our conclusion is the equitable rule against unjust enrichment. As stated by the author of the concurring opinion in the Wylie case: 'The rule proceeds upon the theory that an innocent principal so contracting may not be permitted to enrich himself by reason of his agent's fraud, and that any property received by such principal is held by him as a constructive trustee for the person defrauded.' ''

Running through all these cases is the fact that it is only the *innocent* principal which has limited the authority of its agent in the contract of purchase that comes within the rule protecting the principal against an action for damages for

fraud. If the principal participates in the fraud, then the fraud becomes its own and it cannot escape liability.

Here, while there is no showing that the principal had knowledge of the fraud at the time of the sale, or the execution of the contract, it did learn of it at a later date. Kalkruth presented the matter to John Lyon, the president, general manager and principal stockholder of defendant, who investigated the suggestion that the cabin was on the wrong lot, made measurements and assured Kalkruth that no mistake had been made. This was while Kalkruth was working on a bedroom which was being added to the cabin and before the construction of a kitchen.

Defendant argues that the fraud was committed by the agent at the time of the sale; that it was complete at that time; that subsequent knowledge could not affect or change the liability of defendant.

While this may be true in some cases, the argument may not be applied here. A principal with knowledge may adopt the fraud of its agent. After it does, it can hardly be called an *innocent* principal. Here, defendant, through one of its responsible officers, learned of the fraud and reaffirmed it. Thereafter plaintiffs expended more time and money in improving the property. It would seem that the fraud of the agent became the fraud of the principal under the rule in *Longway* v. *Newbery*, 13 Cal.2d 603 [91 P.2d 110], at page 613. Under these circumstances defendant should be held liable for the damages suffered by plaintiffs.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.