**FALLS SAND AND GRAVEL CO., a corporation, Plaintiff,**

v.

**WESTERN CONCRETE, INC., a corporation, and George A. Fuller Company, a corporation, and Del E. Webb Corporation, a corporation, a Joint Venture, commonly known as Fuller-Webb, Defendants.**

Civ. No. 2433.

United States District Court
D. Montana,
Great Falls Division.

June 6, 1967.

Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for plaintiff.

Alexander, Kuenning & Hall and Church, Harris, Johnson & Williams, Great Falls, Mont., for defendants.

## ORDER AND MEMORANDUM OPINION

JAMESON, Chief Judge.

Plaintiff seeks damages from the joint venture of George A. Fuller Company and Del E. Webb Corporation (Fuller-Webb), which contracted with the United States to construct missile facilities, and Western Concrete, Inc., which furnished concrete for the project pursuant to an agreement with Fuller-Webb. Plaintiff supplied Western Concrete with sand, aggregate and other materials.

This action was commenced in state court on September 9, 1963, and removed to this court by reason of diversity of citizenship. Plaintiff filed its amended complaint on September 2, 1966. On September 7, 1966, defendants filed their joint motion for summary judgment pursuant to Rule 56, F.R.Civ.P., requesting that plaintiff's amended complaint be dismissed, or in the alternative, that each of the four counts be dismissed against the applicable defendant.[1] The last brief was filed May 5, 1967.

The first count of the amended complaint alleges that Fuller-Webb entered into its contract with the United States on February 28, 1961, that Western contracted with Fuller-Webb to furnish the concrete on April 14, 1961, and that Falls contracted with Western to supply sand and aggregate on or about May 1, 1961. Prior to entering into its contract with Western, Falls negotiated with Fuller-Webb and Western with regard to the aggregates to be supplied for the project, and in this connection, on March 29, 1961, Fuller-Webb furnished Falls with a production schedule and amounts of various types of concrete to be used in the project.

According to the amended complaint, from these amounts and schedule, the volume of aggregates needed could be ascertained and the times when aggregates would have to be available could be determined. Relying upon these amounts and production schedule, plaintiff computed its production costs for sand and aggregates, and determined the unit prices at which it would sell its products to Western. Falls thereafter contracted to sell Western "all of the aggregates Western may need in furnishing all of the concrete" and agreed that "the 'aggregates' to be furnished hereunder by Falls shall be available to Western on a twenty-four hour a day, seven days a week basis."

It is further alleged that Fuller-Webb, in furnishing the production schedule and amounts negligently represented to plaintiff that they were accurate, which subsequently proved to be untrue, and that Fuller-Webb and Western failed to follow the projected schedule and amounts. The deviation from the schedule and from any uniform demand resulted in plaintiff's spasmodic operations and attendant increased costs, all of which damaged plaintiff in the amount of $102,785.59.

The second count repleads the preliminary allegations of the first count and alleges that on March 29, 1961, in addition to the production schedule and amounts, Fuller-Webb furnished plaintiff with a "mix design" which showed the percentage of sand needed in the total aggregate. Relying upon the schedule and mix design, Falls computed its unit price for concrete sand at $1.20 per ton. Fuller-Webb negligently represented that the mix design was accurate, but in fact did not follow it both as to the total amount of concrete sand demanded and as to the percentage of concrete sand per cubic yard of concrete. The resulting demand for excess sand damaged plaintiff in the amount of $63,644.91.

Count three alleges that the agreement between Falls and Western provides that, "In the event that at any time it becomes necessary to heat the aggregates, a price adjustment will be negotiated between the parties to reflect the reasonable cost of such heating." Negotiations were conducted with Fuller-Webb and Western under this clause, and the defendants represented to Falls that the aggregates would have to be heated or dried so that their moisture content would not exceed two percent. Relying upon this figure, plaintiff computed its charges for heating or drying and negotiated a price adjustment with Western at a certain price per ton. However, Fuller-Webb and Western thereafter required that the ag-

---

1. Plaintiff also has pending in this court an action brought under the provisions of the Miller Act, 40 U.S.C. 270a et seq. At the time of oral argument it was contemplated by the court and counsel for all parties that the motion in the present case would be considered and decided with plaintiff's Miller Act case. (Civil No. 2373). The cases are related and involve the same contract between plaintiff and the defendant Western Concrete, Inc.

gregates be heated or dried so that the moisture content would be no more than one-half of one percent. Since Western would not accept aggregates with greater moisture content than .5%, Falls incurred extra expense in further drying them to its damage of $37,122.15.

Count four substantially realleges the first count with regard to the production schedule, amounts, and plaintiff's reliance thereon, but specifically alleges that the quantity of Intrusion Prepakt required by defendants did not correspond to the amount calculated using the schedule and amounts furnished by Fuller-Webb. As a result, plaintiff was required to produce in excess of its projected demand which damaged plaintiff in the amount of $7,838.92.

Following the prayer of the amended complaint it is stated that, "If Plaintiff recovers under the First Count, its claim under the Second Count would be reduced by 27.8¢ per ton and its claim in the Third Count would be reduced by 10¢ per ton. The Fourth Count is an alternative to the First Count."

As noted supra (note 1), the court also has under consideration an action instituted by plaintiff against Fuller-Webb and its sureties under the Miller Act. Counsel have stipulated that the court may consider in this case statements submitted by plaintiff to Western between June 15, 1961, and August 30, 1962, covering materials supplied by plaintiff during that period. None of these statements make any reference to the claims asserted in this action.[2]

Defendants have moved for summary judgment on the grounds of (1) election of remedies, (2) waiver of the misrepresentation by affirmance of the contract, and (3) the statute of limitations.

Summary judgment of course is proper only where there is no genuine issue of fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. All doubts as to the existence of a genuine issue as to any material fact must be resolved against the moving party. An issue of fact may arise from countering inferences which are permissible from evidence accepted as true. The court may not weigh evidence or resolve issues in determining a motion for summary judgment.[3]

On the other hand, Rule 56(e), F.R.Civ. P., as amended in 1963, provides that in opposition to a motion for summary judgment an adverse party "may not rest upon the mere allegations or denials of his pleading" but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial."[4]

With these guiding principles in mind, we turn to a consideration of defendants' motion. The first, second and fourth counts of plaintiff's amended complaint are interrelated and relate primarily to the actions of Fuller-Webb which allegedly resulted in damages to plaintiff and are based upon the theory of negligent misrepresentation. The third count relates to the winter operations where a price adjustment was negotiated pursuant to plaintiff's agreement with Western, and for which plaintiff seeks to recover the "reasonable value" of the materials supplied.[5] Accordingly, counts one, two

2. It appears from exhibits in the Miller Act case (Cause 2373) that plaintiff wrote letters to Western, with copies to Fuller-Webb, on October 1, 1962, and November 5, 1962, relative to the balance of $8,063.67 claimed to be due under its contract with Western. In neither letter is there any reference to the claims asserted in this action.

3. See Cameron v. Vancouver Plywood Corporation, 9 Cir. 1959, 266 F.2d 535, 539; Consolidated Electric Co. v. United States for Use of Gough Industries, Inc., 9 Cir. 1966, 355 F.2d 437, 438; United States for Use of Austin v. Western Elec. Co., 9 Cir. 1964, 337 F.2d 568, 575; Wright, Federal Courts (1963) § 99; 6 Moore's Federal Practice 2584–5, para. 56.17 (42).

4. See Doff v. Brunswick Corporation, 9 Cir. 1967, 372 F.2d 801.

5. It also appears from the complaint and briefs submitted that the first two

and four will be considered together, and count three will be considered separately.

## NEGLIGENT MISREPRESENTATION (Counts 1, 2 & 4).

 The issue here is whether Falls, which contracted directly with Western, has a claim for relief against Fuller-Webb, which had previously contracted with Western to supply the concrete. Negligent misrepresentation has been defined as "a false statement made by one who has no reasonable grounds for believing it to be true, although he does not know that it is untrue, or even believes it to be true." Black's Law Dictionary; Mid-Central Fish Co. v. United States, W.D.Mo.1953, 112 F.Supp. 792, 799. The general rule, as stated in 65 C.J.S. Negligence § 20, p. 642 ff. is that:

"[A] false statement negligently made may be the basis of a recovery of damages for injury or loss sustained in consequence of reliance thereon. * * * [I]n order that such liability may exist, it is necessary that the relationship of the parties, arising out of contract or otherwise, be such that one has the right to rely on the other for information, that the one giving the information should owe to the other a duty to give it with care, that the person giving the information should have, or be chargeable with, knowledge that the information is desired for a serious purpose, that the person to whom such information is given intends to rely and act on it, that, if the information given is erroneous, the person to whom it is given will be likely to be injured in person or in property as a result of acting thereon, and that the complaining party is injured by the erroneous information." (footnotes omitted).

This action has specific applicability to business transactions.[6]

### (1) Election of Remedies

 Defendants contend that plaintiff has elected its remedy by bringing action on the contract under the Miller Act. It is clear that in Montana, and generally, a party may not pursue both an action for recission and damages for deceit or misrepresentation. Fraser v. Clark, 1960, 137 Mont. 362, 376, 352 P.2d 681 and cases there cited. On the other hand, it is universally held that an action on the contract and an action for fraud or misrepresentation in the inducement of the contract are not incompatible. The rule was well stated in Bankers Trust Co. v. Pacific Employers Insurance Co., 9 Cir. 1960, 282 F.2d 106, as follows:

"However, this doctrine of election of remedies applies only to choosing between different remedies allowed by law on the same state of facts, where the party has but one cause of action, one right infringed, one wrong to be redressed. * * * It is the law that one who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. * * * 'Thus, an action on a contract induced by fraud is not inconsistent with an action for damages for the deceit; * * *.' (citation). 'A right of action on a contract and for fraud in inducing plaintiff to enter into such contract may exist at the same time, and a recovery on one of the causes will not bar a subsequent action on the other.'" (282 F.2d at 110).

This, of course, is also the law applicable in Montana. Koch v. Rhodes, 1920, 57 Mont. 447, 457, 188 P. 933; Griffiths v. Thrasher, 1933, 95 Mont. 210, 228–229, 26 P.2d 995. It is therefore clear that plaintiff has not made an election of remedies that would bar this action for misrepresentation by bringing suit on the contract in its Miller Act case.

---

counts are asserted against Fuller-Webb alone and the last two against both defendants, although plaintiff concedes in its memorandum in opposition to defendant's motion for summary judgment that

there is merit to defendant Western's objections to the fourth count.

6, Restatement, Torts, § 552; and see Restatement, Torts 2d, Tentative Draft No. 11 § 552 (1965).

### (2) Waiver

██ Defendants also contend that plaintiff has waived its right to sue on the misrepresentation by electing to affirm and perform the contract rather than demand recission at the time the misrepresentation was discovered, citing Waite v. C. E. Shoemaker & Co., 1915, 50 Mont. 264, 146 P. 736. It is true some courts have held that continuing to perform a wholly or partially executory contract after discovering a fraud is a waiver of that fraud, although this is a minority rule. See 13 A.L.R.2d 807 ff. But it is apparent from the language of the Waite case that "[i]f, however, performance in part has been accomplished before discovery of the fraud, and repudiation of the contract is impracticable, a continuance of performance will not be held to be a ratification precluding relief independently of the contract." 50 Mont. at 278–279, 146 P. at 740. It is also clear in Montana that although "by an affirmance of the contract one may waive, not only his right to rescind, but also his right of action for the deceit, it is only when such an intention is clearly manifested that such a waiver will be declared. There is a clear distinction between the waiver of the right to rescind and the waiver of the right of action." Koch v. Rhodes, supra at 458–459, 188 P. at 937. In further emphasizing this distinction, the court in Griffiths v. Thrasher, supra, said:

"In support of their contention of a waiver by defendant, counsel for plaintiff cite the case of McConnell v. Blackley, 66 Mont. 510, 214 P. 64, 66. But that case merely lays down the rule that 'a contract must be promptly rescinded upon discovery of fraud or it will be regarded as having been ratified.' However, it does not appear from the pleadings that defendant is seeking a recission of the contract; in fact, it affirmatively appears that she elected to affirm the contract and sue for damages resulting from the alleged fraud. Her right to follow this procedure is fully recognized in the case of Koch v. Rhodes * * *." (95 Mont. at 228, 26 P.2d at 1002).

These same rules are discussed and approved in Bankers Trust Co. v. Pacific Employers Insurance Co., supra, 282 F.2d at 111–112.

██ In the present case, the contract admittedly was not wholly executory but partially executed before the misrepresentation was discovered. Plaintiff has elected to pursue a remedy in accordance with the laws of Montana. The undisputed evidence before the court does not show a "clear manifestation" that plaintiff intended to waive its right of action on the alleged misrepresentation.

### (3) Statute of Limitations

Defendants contend finally that the claim for misrepresentation is barred by the Montana statute prescribing a two year limitation within which an action for fraud must be commenced.[7] This presents two questions: (a) whether an action for negligent misrepresentation is deemed an action for fraud, and (b) if so, whether the action was commenced within two years of plaintiff's discovery of the alleged misrepresentation.

### (a) Negligent misrepresentation as fraud or deceit.

██ It is clear that an action for negligent misrepresentation is quite different from an action for intentional fraudulent and deceitful misrepresentation, since there is no requirement of scienter. 65 C.J.S. Negligence § 20, p. 645. The oft-cited English case, Derry v. Peek, 1888, 14 App.Cas. 337, distinguished a deceit action by classifying it as an intended wrong or conscious misrepresentation, and held that deceit would not lie for negligent misrepresentations. How-

7. Section 93–2607, R.C.M.1947 prescribes a two year limitation for commencement of:
"4. An action for relief on the ground of fraud or mistake, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

ever, as the law of this tort developed, the courts of the United States have frequently extended the action of deceit into that of negligent misrepresentation by supplying scienter through conclusive presumptions or imputations of negligence. An example is the leading case of Ultramares Corporation v. Touche, 1931, 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139. In that case, Justice Cardozo, speaking for the New York Court of Appeals, held that an accounting firm, which had negligently certified a balance sheet without knowledge that the plaintiff would rely upon it, but with the knowledge that it would be used in general financial dealings, could not be held liable on strict principles of negligence because there was no contemplation of the plaintiff's reliance. Recovery was allowed, however, on grounds of deceit, since the negligence was so great that it amounted to scienter.[8]

There is some conflict in the authorities, depending in large part on the state law, as to whether an action lies in deceit for negligent misrepresentation. In Texas Tunneling Company v. City of Chattanooga, Tennessee, E.D.Tenn.1962, 204 F.Supp. 821, a subcontractor sued for damages sustained when a city sewer it had subcontracted to dig required 34 weeks work instead of the 18 weeks anticipated. In bidding the job, the subcontractor relied upon a boring log drawing submitted to the city by an engineering firm which was incomplete. The district court held (after an excellent discussion of the history of this tort) that although guilty of neither intentional deceit nor reckless, willful, or wanton misrepresentation, the engineering firm was guilty of negligent misrepresentation and was liable to the subcontractor in an action for deceit. However, the Court of Appeals for the Sixth Circuit reversed[9] this part of the decision and refused to allow recovery in favor of one not in privity with the alleged tortfeasor, based on a negligent as opposed to an intentional misrepresentation.[10]

On the other hand, textwriters,[11] general authorities[12] and the American Law Institute[13] are inclined to the view expressed by the district court in Texas Tunneling that an action will lie for damages proximately caused by justifiable reliance upon negligent misrepresentation, without showing intentional deceit.

The Montana court has not considered the precise point, but the case of Sult v. Scandrett, 1947, 119 Mont. 570, 178 P.2d 405 suggests the probability that an action for negligent misrepresentation would be recognized in this state.[14] This

---

8. The problem faced by the court in Ultramares is not present in the instant case, as it is alleged that Fuller-Webb made its representations directly to the plaintiff. But cf. Justice Cardozo's opinion in Glanzer v. Shepard, 1922, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425.

9. Texas Tunneling Company v. City of Chattanooga, Tennessee, 6 Cir. 1964, 329 F.2d 402.

10. The Supreme Court has held that, insofar as the exceptions to the Federal Tort Claims Act are concerned, actions for deceit and misrepresentation are separable. United States v. Neustadt, 1961, 366 U.S. 696, 706 ff., 81 S.Ct. 1294, 6 L.Ed.2d 614.

11. See, e. g., Prosser, Torts, § 88; 1 Harper & James, Law of Torts, § 7.6.

12. 65 C.J.S. Negligence § 20, p. 642 ff.

13. Restatement, Torts, § 552.

14. In Sult v. Scandrett, plaintiff was negotiating a contract to ship his cattle on defendant's railroad. Defendant's freight agent informed the plaintiff that its scales were in good condition, but when plaintiff drove his cattle to defendant's siding and commenced weighing the cattle, the scales proved to be defective, resulting in plaintiff's buyer refusing to purchase the cattle. Plaintiff subsequently was forced to sell the cattle at a lower price, and brought an action in tort for defendant's false statement.
The court held that such an action would lie if the speaker owed a duty to the other to speak correctly, arising from contract or otherwise. Although no contract existed between plaintiff and defendant at the time the statement was made, the court found that the duty existed to speak correctly based upon the impending contract and the fact that defendant was about to become the bailee of plaintiff's goods. There was no indication whether the court felt the action was one for fraud or deceit. For an analysis of this case, see 9 Mont.L.Rev. 88.

is confirmed by the relevant statutes. Section 13–307, R.C.M.1947 provides that, "Fraud is either actual or constructive". Section 13–309 provides:

"Constructive fraud consists:

"1. In any breach of duty which, *without an actually fraudulent intent,* gains an advantage to the person in fault, or anyone claiming under him, by *misleading another to his prejudice* * * *." (Emphasis added).

That the tort of negligent misrepresentation falls within the language of this statute is clear from Hartwell Corporation v. Bumb, 9 Cir. 1965, 345 F.2d 453, construing the identical provision in the California Civil Code.

▇▇▇ I conclude that an action for negligent misrepresentation in Montana is an action for fraud. Accordingly the two year statute of limitations prescribed by Section 93–2607, supra, is applicable in determining whether plaintiff's action is barred.

(b) Did plaintiff commence its action within two years after discovery of the alleged negligent misrepresentation?

As noted supra, Falls entered into its contract to supply materials on or about May 1, 1961. The complaint in this action was not filed until September 9, 1963. The cause of action is not deemed to have accrued until "the discovery by the aggrieved party of the facts constituting the fraud." Thus, if Falls discovered the facts constituting the misrepresentation prior to September 9, 1961, its claim is barred.

▇▇▇ The rule is clear that in Montana "whether there has been a discovery of the facts constituting the fraud within the meaning of the statute is a question of law to be determined from the facts proved." Kerrigan v. O'Meara, 1924, 71 Mont. 1, 8, 227 P. 819, 822; Ray v. Divers, 1928, 81 Mont. 552, 558, 264 P. 673; Lasby v. Burgess, 1930, 88 Mont. 49, 65, 289 P. 1028.

▇▇▇ The Montana rule with respect to discovery of fraud is clearly set forth in Lasby v. Burgess, supra:

"It is not enough for the plaintiff merely to say that he was ignorant of the facts at the time of their occurrence, and has not come into knowledge of them within two years. 'He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have knowledge of them, it being the rule that if he "has notice of information of circumstances which would put him on inquiry which if followed would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of the facts."'" (88 Mont. at 65–66, 289 P. at 1033).

Plaintiff has filed an affidavit of Robert F. Pappin, its president, which reads in pertinent part:

"That it was not until after an audit of its operations for the fiscal year ending June 30, 1962, that Plaintiff learned of the increase in its costs of production, and consequently its damages, caused by the conduct of the Defendants as set out in Plaintiff's Amended Complaint. Prior to and after September 9, 1961, I was personally advised by representatives of Fuller-Webb, including their project manager, assistant and chief engineer, that they were going to bring their production into schedule.

"Plaintiff believed during the period through September 9, 1961, that Defendants' demands for materials would level off and stabilize and that Defendants would bring their production in line with the production schedule."

There are additionally before the court numerous schedules and exhibits of production and costs of Falls during the period in question.

▇▇▇ It is clear from Mr. Pappin's affidavit itself that plaintiff had knowledge prior to September 9, 1961, that Fuller-Webb was not performing in accordance with its proposed production schedule. If, as he states, he was advised "prior to" September 9, 1961, that defendants were going to "bring their pro-

duction into schedule", then obviously he must have known that it was out of line before September 9, 1961. Under the statutes "discovery" and "knowledge" are not convertible terms, it being the rule that "if the plaintiff has notice or information of circumstances which would put him on inquiry which would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of the facts." Frisbee v. Coburn, 1935, 101 Mont. 58, 73, 52 P.2d 882, 889. "Notice of facts and circumstances which would impel a man of ordinary prudence and intelligence to make inquiry is equivalent to knowledge of the facts." Lasby v. Burgess, supra at 62–63, 289 P. at 1032. Under these rules and undisputed facts, I conclude that Falls had made a "discovery of the facts constituting the fraud" within the terms of the applicable Montana statute of limitations prior to September 9, 1961.

The only remaining question is whether the statute was tolled because plaintiff did not learn of the increase in its costs until after September 9, 1961, or by Fuller-Webb's assurances that its production would be "brought into schedule."

■■ It is clear from the court's language in the Kerrigan, Lasby and Ray cases, supra, that the "discovery" exception to the two year fraud statute of limitations is strictly construed. The exception is applicable only when there has been no discovery of the fraud itself; the fact that a person entitled to an action has no knowledge of his right to sue will not prevent the running of the statute. Kerrigan v. O'Meara, supra at 8, 227 P. 819. In other jurisdictions, if the fraud and the persons committing it are both known, lack of ability to prove damages will not excuse a failure to sue or prevent the running of the statute. See Burnham v. Todd, 5 Cir. 1944, 139 F.2d 338, 343. Moreover, plaintiff had over a year

after its damages were ascertained within which to file its action and still be within the two year limitation, but failed to file timely after such knowledge. Under these circumstances, I conclude that the fact that Falls was unable to compute its damages until June, 1962, did not toll the statute.

■ Even though plaintiff had discovered the misrepresentation prior to September 9, 1961, was the statute tolled because Fuller-Webb assured Falls that its production would be brought into schedule? As a general rule, in purely business transactions, reaffirmance of the truth of the original statements, after notice that such statements are fraudulent, does not constitute a concealment of the fraud and so excuse delay in bringing action. 54 C.J.S. Limitations of Actions § 184(a), p. 178; 34 Am.Jur. 137, Lim. of Actions § 171; Anno. 107 A.L.R. 589. This view is based, in part at least, upon the leading case of Feak v. Marion Steam Shovel Co., 9 Cir. 1936, 84 F.2d 670, 107 A.L.R. 583, where the court said:

"Restatements of the fraudulent representation do not of themselves constitute concealment, and where a party is once put upon notice of fraud he cannot avoid the consequences of his constructive knowledge of the fraud nor fulfill his duty to investigate by going to the party he suspects of the fraud. He cannot desist from further investigation because he is reassured of the truth of the original representations." (84 F.2d at 673).

This rule has not been followed in some subsequent cases, although the particular cases have been distinguished on the basis of confidential relationship [15] or that the complaining party only had a "suspicion of the fraud".[16]

While there is no authoritative statement on this point by the Montana court, it is said in Kerrigan v. O'Meara, supra,

---

15. Alton v. Rogers, 1954, 127 Cal.App.2d 667, 274 P.2d 487, 495.

16. Kalkruth v. Resort Properties, 1943, 57 Cal.App.2d 146, 134 P.2d 513, 515.

See also Garrett v. Perry, 1959, 53 Cal. 2d 178, 346 P.2d 758, 760.

that "[u]nless there is some relation of trust or confidence between the parties which imposes upon a defendant the duty of making a full disclosure of the facts, there must be some active affirmative concealment of the fraud, something said or done to continue the deception or to prevent inquiry and lull plaintiff into a sense of security, in order to postpone the running of the statute." (71 Mont. at 7, 227 P. at 821). The court followed this statement with the rule that "mere passiveness, mere silence, on the part of his adversary, cannot be engrafted as an exception on the statute of limitations, * * *." The court did, however, specifically limit the "concealment" exception to a concealment of something which would prevent discovery.[17]

█ Since it has been determined that Falls had made the requisite "discovery" under the Montana Rule prior to September 9, 1961, and in view of the "general" rule that reaffirmation of the fraudulent statement does not toll the statute of limitations in business transactions, I conclude that plaintiff was not excused from bringing its action within two years after the discovery of the misrepresentation. Accordingly, counts one, two and four of plaintiff's amended complaint should be dismissed and summary judgment entered for the defendants on these counts.

### REASONABLE VALUE (Count 3)

In the May 1, 1961 contract the parties agreed that, "in the event that at any time it becomes necessary to heat the aggregates, a price adjustment will be negotiated between the parties to reflect the reasonable cost of such heating." Count 3 of plaintiff's amended complaint alleges that pursuant to this agreement, negotiations were held, and in negotiating a price adjustment with Western, plaintiff relied upon defendant's assurances that two percent moisture content would be sufficient.

As noted supra, the complaint further alleges that Western required a .5% moisture content which substantially increased plaintiff's cost of producing the aggregate. It appears from the affidavit of Robert F. Pappin that plaintiff was advised by Fuller-Webb another adjustment would be made when plaintiff complained of the increased cost. As damages, plaintiff claims $37,122.15, the difference between the "reasonable cost of heating said aggregates, etc. to a moisture content of about .5% and the amount of payments received by Plaintiff therefor."

Defendants resist this claim on the grounds that the contract may not be varied by parol, and that plaintiff has elected its remedy by affirming the contract in its Miller Act suit.

█ Plaintiff has in effect prayed for additional compensation on the theory of unjust enrichment or quantum meruit. Although the rule appears to be in the minority, in Montana it has long been held that "when a party has fully performed an express contract recovery may be had upon a complaint alleging a cause of action in quantum meruit." Puetz v. Carlson, 1961, 139 Mont. 373, 378, 364 P.2d 742, 745 and cases there cited. However, when there is such an express contract pleaded, as here, the rule in Montana is as follows:

" 'There can be no question but that a party with whom an express contract has been made may sue on quantum meruit, and thereafter, on showing a performance of the contract, introduce the express contract to prove the reasonable value of the services rendered. * * * In such case the effect of proof of the express contract is to make the stipulated compensation the quantum meruit in the case.' * * * The only effect in such a case of proof of an express contract fixing the price, is that the stipulated price becomes the

---

17. "To have such effect, there must be something done to prevent discovery—something which can be said to amount to concealment." (71 Mont. at 8, 227 P. at 822). "There must be some affirma-

tive act or representation, or what is equivalent thereto, designed to prevent, and which does prevent, discovery." (71 Mont. at 9, 227 P. at 822).

quantum meruit in the case." Puetz v. Carlson, supra at 378–379, 364 P.2d at 745. (Citations omitted).

These rules apply to plaintiff since it is uncontested that plaintiff chose not to rescind, but rather fully performed the contract and submitted statements regularly to Western for materials furnished. It is clear also that plaintiff's recovery in this count is based solely upon quantum meruit, and not upon fraud, misrepresentation or breach of contract.

Stipulation exhibits 1 through 14 are copies of statements for materials furnished submitted to Western by Falls during the entire course of the project, and include charges made for the heated or dried aggregates involved in count three of the amended complaint. From these exhibits it appears that prior to November 1, 1961, plaintiff charged Western the May 1 contract price of $1.20 per ton for aggregates furnished. On or about November 1, 1961, and until November 10, 1961, Falls charged Western $1.13 per ton for aggregates supplied. (Stip. Ex. 6) On November 10, the price per ton of sand was $2.70, and on December 22 and thereafter sand was billed at $2.70 and rock at $2.45 or $2.52 per ton. (Stip. Ex. 8–11). It is clear that the higher prices invoiced from November, 1961, to April, 1962 reflect the charge for winter operations, as some of the invoices state specifically that the charges are made for "dried" materials. (See, e. g., Stip. Ex. 10).

As noted supra, this motion is being considered in conjunction with plaintiff's Miller Act case. It was stipulated in that case that plaintiff's measure of recovery, if allowed, would be $8,063.67 or the difference between the invoiced amounts to Western and the payments made thereon.[18] And, of course, that action is essentially one affirming the same contract (for price adjustment) under consideration in the present case.

Falls performed the contract after negotiating a price adjustment and billed the defendant Western accordingly. The contract was fully executed,[19] and Falls seeks recovery upon this executed contract in its Miller Act suit. Under the Montana rule above, recovery in this action upon the theory of quantum meruit would be limited to the amount claimed under the contract. Since recovery has been allowed plaintiff in its Miller Act suit on the contract, permitting plaintiff to pursue count three of its amended complaint in this action would be duplication and allowance of double recovery. For this reason, count three of the amended complaint should be dismissed and summary judgment entered for the defendants.

Accordingly it is the conclusion of the court:

(1) With respect to the defense of the statute of limitations in counts one, two and four, there is no genuine issue of any material fact, and defendants are entitled to a judgment as a matter of law.

(2) With respect to count three there is no genuine issue of any material fact, and defendants are entitled to a judgment as a matter of law.

Pursuant to Rule 11 of the local rules of court, defendants will prepare, serve and lodge judgment in accordance with this opinion.

18. As noted supra, plaintiff did not assert any additional claim in the statements submitted to Western, or in its letters to Western, with copies to Fuller-Webb, subsequent to the completion of the project.

19. See Griffiths v. Thrasher, 1933, 95 Mont. 210, 222, 26 P.2d 995.