**Gladys STRAY CALF et al.,
Plaintiffs,**

v.

**SCOTT LAND & LIVESTOCK COM-
PANY et al., Defendants.**

**Civil No. 74-18-Blg.**

United States District Court,
D. Montana,
Billings Division.
Jan. 31, 1975.

**434**

A. John Wabaunsee and Daniel H. Israel, Native American Rights Fund, Boulder, Colo., Court E. Ball, Towe, Neely & Ball, Billings, Mont., for plaintiffs.

Cale Crowley, Crowley, Kilbourne, Haughey, Hanson & Gallagher, R. F. Hibbs, Billings, Mont., for non-federal defendants.

Otis L. Packwood, U. S. Atty., Billings, Mont., for U. S. A.

BOLDT, Senior District Judge.

This action is brought by several Crow Indians, declared competent pursuant to the Crow Allotment Act of 1920, as amended,[1] who leased their land allotments to the non-governmental defendants. Title to the land involved is held by the United States in trust for the Indians. Plaintiffs seek a declaration that the leasing practices of the defendant-lessees violate the Crow Allotment Act, as amended, and that the leases are therefore null and void. Plaintiffs also seek injunctive relief and damages against defendant-lessees. The Court has jurisdiction pursuant to 28 U.S.C. § 1331(a) with respect to plaintiffs and the non-governmental defendants,[2] but

---

[1]. 41 Statutes at Large 751; relevant amendments are Act of May 26, 1926 (44 Stat. 658, 659), Act of March 3, 1927 (44 Stat. 1365, 1366) and Act of March 15, 1948 (62 Stat. 80).

[2]. At oral argument, counsel for the defendant-lessees acknowledged waiver of jurisdictional objections; in addition, the Court cannot say with "a legal certainty" that the jurisdictional amount is not satisfied. St. Paul

for reasons set forth below, the Court has determined it does not have jurisdiction over defendant United States.

The following motions are presented to the Court for determination:

1. Motion by defendant United States to dismiss the complaint;

2. Motion by nongovernmental defendants to dismiss the complaint;

3. Motion by plaintiffs for partial summary judgment (damage issues reserved); and

4. Motion by non-governmental defendants for summary judgment.

Counsel have stipulated that, except for issues as to alleged damages, all discovery desired by any party has been completed and no factual issues are presented. The Court having read and fully considered the legal memoranda of all counsel and having heard oral argument on January 23, 1975, the Court hereby finds and holds that the facts are as so stipulated by counsel and as further described in the rulings set forth below, and hereby makes further Findings of Fact and Conclusions of Law and rulings on said motions as follows:

■ 1. *Motion by defendant United States to dismiss the complaint as to said defendant*:

Plaintiffs assert no claims against, nor do they seek any relief from, defendant United States. More importantly, the United States has not consented to be sued in this action. For these reasons, this Court is of the opinion that it has no jurisdiction of this action with respect to the United States, see Affiliated Ute Citizens of Utah v. U. S., 406 U. S.

128, 141–2, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); Seifert v. Udall, 280 F. Supp. 443, 446 (1968), and therefore the motion of defendant United States to dismiss is granted.

2. Motion by non-governmental *fendants to dismiss the complaint*:

At oral argument, counsel for defendant-lessees expressly waived the jurisdictional grounds of their motion to dismiss. With respect to the Rule 12(b)(6) defense of failure to state a claim upon which relief can be granted, matters outside the pleadings have been presented to and considered by the Court and therefore the motion is treated as one for summary judgment, either merged with or superseded by defendant-lessees' motion No. 4 discussed immediately below. Therefore, the motion by defendant-lessees to dismiss requires no ruling.

3. *Motion by plaintiffs for partial summary judgment*; and

■ 4. *Motion by non-governmental defendants for summary judgment*:

These two motions will be considered together since they deal with the identical issue of legality of the leasing practices employed by defendant-lessees with respect to the allotment lands held by plaintiffs. The Crow Allotment Act, as amended, allows competent Crow Indians such as plaintiffs to lease their allotment lands upon such terms and conditions as they see fit, subject only to restrictions as to the length of the term of the lease, (5 years for grazing lands and 10 years for irrigable lands). As stated in U. S. v. Labbitt, 334 F.Supp. 665 (D. Mont., 1971), this Court is of the opinion that the 1948 amendment[3] to the Crow

---

Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Kimball v. Callahan, 493 F.2d 564 (9th Cir., 1974).

3. " * * * Provided further, That any Crow Indian classified as competent may lease his or her trust lands or any part thereof and the trust lands of their minor children for farming and grazing purposes: *Provided, That any Crow Indian classified as competent shall have the full responsibility of obtaining com-*

*pliance with the terms of any lease made*: And Provided further, That leases on inherited or devised trust lands having more than five competent devisees or heirs shall be made only with the approval of the Superintendent. Any adult incompetent Indian with the approval of the Superintendent may lease his or her trust lands or any part thereof and the inherited or trust lands of their minor children for farming or grazing purposes. The trust lands of orphan minors shall be leased by the Superintendent. Moneys received for

Allotment Act repealed prior restrictions as to leasing practices, particularly the 1927 amendment [4] prohibiting re-leasing more than one year (for grazing lands) or 18 months (for farming lands) prior to the termination of an existing lease. This conclusion is consistent both with the legislative history of the Act and its amendments, and with the Congressional intent to gradually emancipate the competent Crow Indians so that they may manage their allotted property without governmental control or interference.[5]

The typical leasing practice employed herein is as follows: [6]

Plaintiff-allottee executes a lease of his land to the defendant for a term of five (or ten) years; lessee pays the rental for the full term of the lease in advance; at the end of one year, lessor and lessee execute a cancellation of the existing lease, effective that date; thereafter on the same day, and by a separate document, lessor and lessee enter into a new five (or ten) year lease for a higher rental fee, with the lessee paying in advance the rental for the additional year just added (in recent years, additional consideration for execution of the new lease has been given by lessee in the form of a bonus provision determined by increases in the price of livestock); and each year thereafter the existing lease is cancelled while having four (or nine) years of its term remaining, and by separate document, and for additional consideration, a new five (or ten) year lease is executed.

Plaintiffs allege that the above described leasing practices violate the Crow Allotment Act, as amended, and the provisions of 25 CFR § 131.15, and rely primarily upon the decisions in U. S. v. Noble, 237 U.S. 74, 35 S.Ct. 532, 59 L.Ed. 844 (1915), and U. S. v. Labbitt, supra. The Court finds that the present leasing practices are consistent with the letter of the 1948 amendment quoted previously. Whether such practices are consistent with the spirit of that amendment will be considered hereinafter.

25 CFR § 131.15(a) [7] expressly provides that the regulations sought to be enforced by plaintiffs apply to competent Crow Indians *only* when they have authorized the Secretary of Interior to participate in their leasing activities. It is undisputed in the record, and admitted by plaintiffs, that each plaintiff is a competent Crow Indian and that none has elected to authorize the Secretary to

---

and on behalf of all incompetent Indians and minor children shall be paid to the Superintendent by the lessee for the benefit of said Indians. *No lease shall be made for a period longer than five years, except irrigable lands under the Big Horn Canal, which may be leased for periods of ten years.* All leases made under this Act shall be recorded at the Crow Agency." (emphasis added).

4. "And provided further, That no lease of *grazing lands* now in force or hereafter made shall be renewed, or any of the lands embraced within the same be re-leased, *prior to one year before the termination of such lease*: And provided further, That no lease of *farming lands* now in force or hereafter made shall be renewed, or any of the lands embraced within the same be re-leased, *prior to eighteen months before the termination of such lease.*" (emphasis added).

5. See "Brief of (lessee) Defendant Answering Motion for Partial Summary Judgment and in Support of Separate Motion for Summary Judgment by (lessee) Defendants," filed 8/16/74, pages 4–15.

6. Copies of all leases between any plaintiff and any defendant herein are contained in the Clerk's file, Document #25, filed 7/24/74.

7. "§ 131.15 Crow Reservation.
(a) Notwithstanding the regulations in other sections of this Part 131, *Crow Indians classified as competent* under the Act of June 4, 1920 (41 Stat. 751), as amended, *may lease their trust lands* and the trust lands of their minor children for farming or grazing purposes *without the approval of the Secretary* pursuant to the Act of May 26, 1926 (44 Stat. 658), as amended by the Act of March 15, 1948 (62 Stat. 80). *However, at their election Crow Indians classified as competent may authorize the Secretary to lease, or assist in the leasing of such lands,* and an appropriate notice of such action shall be made a matter of record. *When this prerogative is exercised, the general regulations contained in this Part 131 shall be applicable.* Approval of the Secretary is required on leases signed by Crow Indians not classified as competent or made on inherited or devised trust lands owned by more than five competent devisees or heirs." (emphasis added).

lease or assist in the leasing of these land allotments. It is therefore clear that the other provisions of Section 131.-15 do *not* apply to the leasing practices at issue here. •

The leasing practices employed by defendant-lessees prior to 1962, and the practices held invalid in U. S. v. Labbitt, differ in several significant respects from the leasing practices described above. The old "LEASE (with cancellation)" practices involved cancellation of existing leases during their term, to be effective 12 or 18 months in the future; by the *same* document, a new lease was executed to take effect on that same date 12 or 18 months in the future. This practice gave a present lessee a preference right to future leases which resulted in overlapping lease terms that extended the time the land allotments were encumbered beyond the period allowed by statute. The current "LEASE (of competent Indian land)" practices do not create overlapping periods of encumbrance on the land, and do not give the existing lessee a preference right to future leases, and are therefore distinguishable from the factual situations in U. S. v. Noble and U. S. v. Labbitt.

Plaintiffs contend, however, that the financial realities of the current leasing practices in fact compel the Indian-lessors to re-lease their lands to the current lessees. Prepayment of rent for the entire lease term means that plaintiff-lessors do not receive any annual payment of rent at the beginning of the second through fifth (or tenth) years of the leases (although some compensation may be received for some of those years as a result of the bonus provisions). Plaintiffs assert that they do not wish to unilaterally cancel the leases prior to expiration of the term and thereby be exposed to liability for breach of contract; nor can they obtain a mutual cancellation of these leases during their term because of the inability of plaintiffs to repay to lessees the advance rental payments for the latter four (or nine) years of the leases. Plaintiffs therefore contend that the

financial incentive to receive at least a single year's rental payment forces the lessors to execute the cancellations and the new leases each year, and thereby provides defendants with perpetual leases of the properties.

█ While recognizing that the current leasing practices may in fact result in situations not desirable to the plaintiff-lessors, the Court is nevertheless constrained to conclude that said practices do not violate either the letter or spirit of the 1948 amendment to the Crow Allotment Act. Indeed, in the opinion of this Court, the cancellation and new lease procedure may well be of substantial value to plaintiffs by permitting negotiation of new lease provisions more favorable than those contained in the existing leases. U. S. v. Abrams, 194 F. 82, 83–4 (8th Cir., 1912) emphasized that the Indian allottee must be free to make a new lease to such "party or parties as [the allottee] might see fit" within the time period provided by statute. The current leasing practice does not obligate the Indian allottee to cancel the lease prior to expiration of its term, and the allottee is free to simply let the lease run to its conclusion. If the Indian allottee chooses to cancel the lease during its term and, while the land is then free of any encumbrance, chooses to re-lease the land allotment in exchange for different terms or additional compensation, such a freedom of choice with respect to business negotiations is clearly consistent with the Congressional intent that competent Crow Indians be allowed to manage their allotted properties without governmental control or interference. If Congress should be dissatisfied with the financially motivated realities of the existing leasing practices, it is the responsibility of Congress, and not this Court, to implement legislative change.

█ With respect to the pre-1962 leases between the parties to this action, which defendant-lessees admit to be invalid under U. S. v. Labbitt, the Court concludes that plaintiffs are prevented

**438**

from presenting any such claims by reason of laches and estoppel; see Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719 (1892). Furthermore, even if such claims were timely presented, the invalid contracts have long been fully performed and all consideration provided for therein has been paid and received, and the Court will not interfere with such matters at this time. See McManus v. Fulton, 85 Mont. 170, 278 Pac. 126 (1929), and Falls Sand and Gravel Co. v. Western Concrete, Inc., 270 F.Supp. 495 (D.Mont., 1967).

For the reasons above set forth, the motion by plaintiffs for partial summary judgment is denied, and the motion by the non-governmental defendants for summary judgment on all issues is granted.

It is so ordered this 31st day of January, 1975.